IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEVI BODDEN,                              *
                                          *
            Plaintiff,                    *
                                          *
      v.                                  *          Civil Action No.  ADC-24-01430
                                          *
LOGAN WALSH, et al.                       *
                                          *
            Defendants.                   *
                                          *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Defendants Town of Bel Air and The Bel Air Police Department have moved this Court to dismiss Plaintiff Levi Bodden's ("Plaintiff") Complaint, ECF No. 1, for failure to state a claim.[1] ECF No. 34-1. Specifically, Defendant Town of Bel Air has moved this Court to dismiss Counts I-VIII and Count X of Plaintiff's Complaint, while Defendant Bel Air Police Department has moved this Court to dismiss Plaintiff's claims against them in their entirety.

Additionally, and separate from Defendant Town of Bel Air and Bel Air Police Department's Motion, Defendants Jessica Carpenter ("Carpenter") and David Madden ("Madden") move this Court to dismiss Counts I-VII and Count IX of Plaintiff Levi Bodden's Complaint for failure to state a claim or, in the alternative, for summary

---

[1] On May 16, 2024, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with Standing Order 2019-07. ECF No. 2. All parties voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF No. 33.

judgement in their favor. ECF No. 38-1. After considering the Defendants' Motions and the responses thereto, the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2023).

For the reasons stated herein, the Court will GRANT Defendant Town of Bel Air and Bel Air Police Department's Motion to Dismiss (ECF No. 34-1). The Court will further GRANT Defendants Carpenter and Madden's Motion to Dismiss or, in the Alternative, for Summary Judgement (ECF No. 38-1).

## FACTUAL AND PROCEDURAL BACKGROUND

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the challenged complaint. *See Williams v. Kincaid*, 45 F.4th 759, 765-66 (4th Cir. 2022). Plaintiff, Levi Bodden, is a resident of North Carolina who grew up in Bel Air, Maryland. ECF No. 1 at ¶ 17. On May 19th, the day of the encounter in question, Plaintiff was dog sitting for his friend, Desmond Pinelli ("Pinelli") at Pinelli's property at 1067 Wingate Court, Bel Air, Maryland, 21014. ECF No. 1 at ¶ 18. Pinelli maintained a "contentious relationship" with neighbors located at 1057 Wingate Court, Bel Air, Maryland 21014. *Id.* at ¶ 19. Ultimately, Pinelli's relationship with his neighbors "brought those parties to court proceedings in both the civil and criminal realm." *Id.*

Plaintiff describes these interactions between Pinelli and his neighbors as "nothing short of a contentious, 'nit-picky' neighborly dispute." *Id.* Due to these disputes, Plaintiff contends that "Bel Air Police were familiar with the parties, and knew there was never any threat of violence or the like." *Id.* at ¶ 20. Of note to the events in question here, these

2

disputes between Pinelli and his neighbors included a lawsuit brought by Pinelli in May of 2022. *Id.* at ¶ 21. The suit went to trial, where Pinelli won $1,740 in compensatory damages against Rachael Dean ("Dean"), a resident of 1057 Wingate Court. *Id.* Dean failed to pay the judgement owed to Pinelli, and "thereafter Pinelli recorded the judgement with the Circuit Court of Maryland for Harford County on March 8th 2023." *Id.* at ¶ 22.

Plaintiff claims that the judgement against Dean led to an argument between himself and the residents of 1057 Wingate Court on May 16th, 2023, at which time Plaintiff was dog sitting for Pinelli. *Id.* at ¶ 24. On this date, Plaintiff "had a verbal argument" with the residents of 1057 Wingate Court concerning the "neighbors' overall dispute and the outstanding monies due and owed to Mr. Pinelli per the Court ordered judgement." *Id.* At some point during this exchange, a resident of 1057 Wingate Court "called the Bel Air Police Department to the scene via emergency services, 911." *Id.* at ¶ 26. The Bel Air Police Department was then dispatched to the area of 1057 Wingate Court for a report of a disorderly male. ECF No. 1 at ¶ 27.

Four officers of the Bel Air Police Department responded to the scene. *Id.* at ¶ 28. "At virtually all times," officers surrounded Plaintiff "to ensure Plaintiff was no threat or risk of flight." *Id.* At the time of the officers' arrival, the Plaintiff was intoxicated, "his movements lacked coordination, were slow, and his speech was stumbled and slurred." *Id.* at ¶ 29. Plaintiff contends that his intoxication was readily apparent and that at least one officer "immediately recognized" these facts. *Id.* Additionally, at this time, Plaintiff wore

3

a tank top, khaki shorts, and white casual canvas shoes. *Id.* at ¶ 30. Thus, Plaintiff further contends it was "readily apparent" that he was unarmed. *Id.*

Plaintiff then engaged in conversation with the officers. ECF No. 1 at ¶ 31. Specifically, Plaintiff contends that he primarily talked with either Officer Graziano or Officer Ganovski, as he is unsure of which fourth officer was on the scene at this time. *Id.* During these conversations, which lasted for over five minutes, Plaintiff attempted to explain the dispute and "previous verbal words exchanged with residents of 1057 Wingate Court." *Id.* at ¶ 31. Following the exchange, either Officer Graziano or Officer Ganovski "asked Plaintiff to move onto the public sidewalk, off private property[.]" *Id.* at ¶ 33. Plaintiff complied, and at this point either Officer Graziano or Officer Ganovski requested that Plaintiff return to Pinelli's home for the evening. *Id.* at ¶ 34.

As he was returning home, Plaintiff "thanked Officer Graziano or Officer Ganovski" and "noted his displeasure with the conduct of Sargent Madden[.]" *Id.* at 35. Then, with Plaintiff located "approximately twenty (20) yards up the sidewalk toward his friend's house[,]" Sargent Madden "hurriedly approached" the Plaintiff. ECF No. 1 at ¶ 36. Logan F. Walsh ("Walsh,") followed Sargent Madden and stated "I say we take 'em." *Id.* At this point, Officer Walsh "jumped in front of Sargent Madden and Officer Graziano or Officer Ganvoski[.]" *Id.* at ¶ 37. Plaintiff then began recording the interaction on his cell phone, informing the Officers of his actions. *Id.* at ¶ 38. As Plaintiff began walking toward Pinelli's home, he "asked Officer Logan F. Walsh to stop walking so close to him." *Id.* at ¶ 41. At this time, Plaintiff's back was turned toward Officer Walsh. *Id.* Officer Walsh then

"jumped on Plaintiff's back, putting him in a holding position known as a 'full nelson,' taking him to the ground." *Id.* Sargent Madden and Officer Carpenter assisted Officer Walsh in apprehending the Plaintiff. *Id.*

While Plaintiff was lying face down, with both hands behind his back, Officer Walsh came into contact with Plaintiff's head, "slamming it against the concrete two (2) times." *Id.* at ¶ 46. Officer Walsh then noted: "Oh never mind, it's my bodycam. Sorry, I thought he was reaching for something." *Id.* at ¶ 48. Following this, Officer Walsh took Plaintiff to his vehicle for transport to the Bel Air Police Department. *Id.* at ¶ 50. When they arrived at Officer Walsh's vehicle, while Plaintiff was still handcuffed, Officer Walsh told Plaintiff to "shut up[,]" reached his arm around Plaintiff's neck, and "body slam[med] him once again to the ground." *Id.* at ¶ 51. After other officers assisted Plaintiff to his feet, he then sat in Officer Walsh's car. *Id.* at ¶¶ 51-52.

At this point, Plaintiff displayed visible wounds on his forehead and had his hands cuffed behind his back. ECF No. 1 at ¶ 53. While Officer Walsh secured Plaintiff's seat belt, Plaintiff told him: "My mom is a nurse and you are being charged." *Id.* Plaintiff contends that Officer Walsh "took great offense" to this and "violently assaulted Plaintiff by grabbing his nose and mouth with both hands while wearing thick black gloves." *Id.*

The Officers failed to render medical aid after these interactions with Plaintiff, instead transporting Plaintiff to police barracks for charging, booking, and processing. *Id.* at ¶ 54. Plaintiff stayed at the barracks for eight to ten (8-10) hours. *Id.* During this time, Plaintiff "advised the Officers and Defendants of his ongoing head pain, dizziness, and

5

trauma[.]" ECF No. 1 at ¶ 55. Plaintiff contends that these same personnel "did nothing so that the Plaintiff would continue to suffer." *Id.* Plaintiff further contends that these events have caused him "mental anguish, emotional distress, depression, loss of enjoyment of life, loss of ability and interest to engage in day-to-day activities, medical bills, loss of income and wages." *Id.* at ¶ 64.

On May 22nd, 2023, following the May 16th incident, Deputy Chief David Hughes of the Bel Air Police Department visited the Plaintiff, engaging him in conversation and indicating that he viewed the body camera footage of the night in question. *Id.* at ¶ 65-66. During this conversation, Plaintiff told Deputy Chief Hughes: "Yeah, you can be arrested for that, but even I did a heinous crime, after I'm handcuffed and not resisting, you still can't smash my head against the concrete." *Id.* at ¶ 66. Deputy Chief Hughes then nodded, responding "ok, alright… listen, you're afforded as many options as you have available to you, alright, I'm not going to argue that point with you." ECF No. 1 at ¶ 67. Deputy Chief Hughes further stated: "I'm just telling you, remember this, we wouldn't have been out here, if we didn't get a call about you standing in front of a ladies house giving her a bunch of crap." *Id.* Plaintiff contends that the visit "could only conceivably be to attempt to persuade Plaintiff to not file this instant complaint and causes of action." *Id.* at ¶ 68. On May 16th, 2024, Plaintiff filed the Complaint at issue, bringing ten counts against Defendants, Logan F. Walsh, Jessica Carpenter, David Madden, the Bel Air Police Department, and the Town of Bel Air. ECF No. 1 at 1.

6

Specifically, Plaintiff looks to hold Defendants liable for Assault (Count I); Battery (Count II); False Imprisonment (Count III); Intentional Infliction of Emotional Distress (Count IV); Retaliation and Use of Excessive Force in Violation of the 1st and 14th Amendments under 42 U.S.C. § 1983 (Count V); Violation of the 4th and 14th Amendments of the United States Constitution under 42 U.S.C. § 1983 (Count VI); Failure to Intervene in Violation of the 4th and 14th Amendments of the United States Constitution under 42 U.S.C. § 1983 (Count VII); Failure to Properly Hire, Train, and Supervise under 42 U.S.C. § 1983 (Count VIII); Violation of the Maryland Declaration of Rights, Articles 16, 24, 26, and 40 (Count IX); and Respondeat Superior (Count X). Furthermore, Plaintiff seeks to hold Defendants Walsh, Carpenter, and Madden liable in both their personal and official capacities. *Id.* at 15-26.

## DISCUSSION

### Standard of Review

A Rule 12(b)(6) motion "tests the sufficiency of the claims pled in a complaint." *Nadendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019)). Its purpose is not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Rather, "[a] Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts alleged by the plaintiff are true, the complaint fails as a matter of law 'to state a claim upon which relief can be granted.'"

7

*Gaines v. Baltimore Police Dep't*, No. ELH-21-1211, 2023 WL 2185779, at *7 (D.Md. 2023) (quoting Fed. R. Civ. P. 12(b)(6)).

Upon reviewing a motion to dismiss, the Court accepts "all well-pleaded allegations as true and construe[s] the facts in the light most favorable to the plaintiffs." *In re Willis Towers Watson plc Proxy Litig.*, 937 F.3d 297, 302 (4th Cir. 2019) (citations omitted). However, it does not accept as true legal conclusions couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when Plaintiff "pleads factual content that allows the court to draw the reasonable inference that [Defendant] is liable for the misconduct alleged." *Id.* An inference of a "mere possibility of misconduct" is not sufficient to support a plausible claim. *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**Analysis**

I.    Plaintiff's Claims Against the Bel Air Police Department

As a preliminary matter, Defendant Town of Bel Air and Bel Air Police Department correctly state that a local police department is considered an agent of the governing locality and is not viewed as a separate legal entity. *See Revene v. Charles Cnty. Comm's*, 882 F.2d 870, 874 (4th Cir. 1989) (finding the office of the Sheriff of Charles County did not represent a cognizable legal entity separate from the County government); *Smith v.*

8

*Aita*, No. CIV.A.ELH-14-3074, 2014 WL 7359503, at *1 (D. Md. Dec. 22, 2014)

(dismissing claims against the Salisbury Police Department after parties agreed that the

City of Salisbury was the proper party to be sued); *LaFon v. Baltimore Cnty.*, No. CV GLR-

15-3216, 2016 WL 241376 (D.Md. Jan. 20, 2016) (finding that the Baltimore County

Police Department had no legal identity separate and distinct from Baltimore County, and

thus lacked the requisite capacity to be sued). For this reason, the Court dismisses

Plaintiff's claims against the Bel Air Police Department.

II.     Plaintiff's Claims Against the Town of Bel Air

A. Common Law Claims

Plaintiff brings several common law claims against the Town of Bel Air, including

Assault (Count I); Battery (Count II); False Imprisonment (Count III); and Intentional

Infliction of Emotional Distress (Count IV). However, unless its immunity is legislatively

waived, a local government is immune from liability for tortious conduct committed while

the entity is acting in a governmental capacity. *See LaFon*, 2016 WL 241376, at *2; *Savage

v. Mayor & City Council, Salisbury, MD*, No. CCB-08-3200, 2009 WL 1119087, at *5

(D.Md. April 22, 2009). Furthermore "a local government acts in a governmental capacity

when it runs and supervises a police force." *See LaFon*, 2016 WL 241376, at *2.

While the Local Government Tort Claims Act (LGTCA) requires local governments

to indemnify their employees for certain tortious acts committed without malice and within

the scope of their employment, the LGTCA does not create liability on the part of the local

government. *See LaFon*, 2016 WL 241376, at *2; *Hall v. Balt. Police Dep't*, No. RDB–09–

9

0333, 2009 WL 3247782, at *3 (D.Md. Oct. 6, 2009) (holding that the Baltimore City Police Department could not be properly named as a defendant in a common law tort suit; *Dawson v. Prince George's Cnty.*, 896 F.Supp. 537, 539 (D.Md. 1995) (reasoning that while local governments are financially responsible for judgements against their employees, the LGTCA does not create liability on the part of local governments).

Turning to the facts at hand here, Defendant correctly asserts that the Town of Bel Air acts in a governmental capacity through the operation of its police force and is thus immune from direct tort suits related to conduct it carries out in this governmental capacity. *See* ECF No. 34-1 at 6; *see also Lanford v. Prince George's Cnty.*, 199 F. Supp. 2d 297, 302 (D.Md. 2002) ("The employment and supervision of police officers is a governmental function, and not proprietary or corporate. As such, governmental immunity protects the county from liability in tort for simple negligence.").

Plaintiff points to various provisions of the LGTCA, Maryland Tort Claims Acts (MTCA), and related statutes in their response to Defendant's Motion. *See* ECF No. 37-1 at 4-8. Still, these provisions fail to provide the Plaintiff with an avenue to name a local government in a direct tort suit of this kind. Instead, they recognize that, while local governments are required to indemnify their employees for certain judgements, they may not be directly named in a common law tort suit concerning governmental functions. *See Talley v. Anne Arundel Cnty.*, No. CV RDB-21-347, 2021 WL 4244759, at *5 (D.Md. Sept. 17, 2021) (rejecting plaintiff's argument that the LGTCA waives a County's immunity where its employees act within the scope of their employment and without malice or gross negligence); *Rounds v. Maryland-Nat. Capital Park and Planning Comm'n*, 441 Md. 621,

639 (2015) (holding that the LGTCA does not waive any preexisting immunity held by the local government or its employees); *Hansen v. City of Laurel*, 420 Md. 670, 680 n.5 (2011) (reasoning that the LGTCA designates a local government as a de-facto insurer for indemnification purposes in certain judgements). Accordingly, the Plaintiff's claims listed in Counts I-IV against the Town of Bel Air are dismissed.

B. Vicarious Liability Claims Under 42 U.S.C. Section 1983

Plaintiff brings several claims against the Town of Bel Air under 42 U.S.C. § 1983, including Retaliation and Use of Excessive Force in Violation of the 1st and 14th Amendments under 42 U.S.C. § 1983 (Count V); Violation of the 4th and 14th Amendments of the United States Constitution under 42 U.S.C. § 1983 (Count VI); Failure to Intervene in Violation of the 4th and 14th Amendments of the United States Constitution under 42 U.S.C. § 1983 (Count VII); Failure to Properly Hire, Train, and Supervise under 42 U.S.C. § 1983 (Count VIII).

As an initial matter, claims brough pursuant to § 1983 require a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (holding that a plaintiff must affirmatively show that the official acted personally to deprive plaintiff of his rights). Thus, "respondeat superior liability does not exist under § 1983." *Watkins v. Butler*, No. 1:20-CV-00208-JRR, 2024 WL 37995, at *7 (D.Md. Jan. 3, 2024); *see also Iqbal*, 556 U.S at 676 (explaining that vicarious liability is inapplicable to § 1983 suits and that a plaintiff must plead that each Government official defendant, through their own actions, has violated the constitution).

11

It follows that Plaintiff's claims in Counts V, VI and VII fail against the Town of Bel Air, as they are based on theories of vicarious liability and respondeat superior that are not available under 42 U.S.C. § 1983. In Plaintiff's Complaint, they explicitly state that they base their claims against the Town of Bel Air on a respondeat superior theory of liability, which, as explained above, fails as a matter of law. *See* ECF No. 1 at 26. Accordingly, the Court dismisses Counts V-VII against Defendant Town of Bel Air.

C. Failure to Train Claims Under 42 U.S.C. § 1983

In Count VIII, Plaintiff argues that the Town of Bel Air should be held liable under 42 U.S.C. § 1983 for its failure to properly hire, train, and supervise its police force. To properly state a *Monell* claim for failure to train, "the plaintiff must allege facts that reveal: '(1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training.'" *McDowell v. Grimes*, No. GLR-17-3200, 2018 WL 3756727, at *4 (D.Md. Aug. 7, 2018) (quoting *Jones v. Chapman*, No. ELH-14-2627, 2015 WL 4509871, at *18 (D.Md. July 24, 2015).

As it relates to the first element, this Court has dismissed failure to train claims where the Plaintiff fails to allege sufficient facts showing the nature of the officers' training. *See Litchfield v. Rinehart*, No. CV GLR-21-2101, 2023 WL 7410857, at *4 (D.Md. Nov. 9, 2023) (finding plaintiff's allegations "too broad and conclusory to establish the first element of a failure to train *Monell* claim"); *Peters v. City of Mount Rainier*, No. GJH-14-955, 2014 WL 4855032, at *5 (D.Md. Sept. 29, 2014) (finding it insufficient to

state "in broad, conclusory terms and in a variety of different ways" that the police department "failed to train and supervise its officers"). On the other hand, this Court has upheld failure to train claims where plaintiffs allege specific deficiencies in a police department's training program. *See Johnson v. Balt. Police Dep't*, No. ELH-19-00698, 2020 WL 1169739, at *33 (D.Md. Mar. 10, 2020) (finding plaintiff's allegations plausible where they referenced deficiencies related to the Baltimore City Police Department's failure to train officers on the obligation to disclose exculpatory information and the failure to discipline and supervise officers for fabricating evidence).

Here, while this Court acknowledges that Plaintiff's knowledge of the Town's internal policies is limited without the tools provided by discovery, it still finds that the Plaintiff's complaint fails to meet its burden under the first element of a *Monell* failure to train claim. Specifically, Plaintiff's Complaint fails to list specific details showing the nature of the training that the officers received, merely stating that the training is deficient in conclusory terms. Thus, Plaintiff's Complaint stands similar to those that this Court rejected in *Litchfield* and *Peters*.

Even if Plaintiff's Complaint met this first element of a failure to train claim, Plaintiff's complaint further fails to show how this failure would amount to deliberate indifference on the part of the municipality. Such deliberate indifference cannot be shown by proving a single instance of police misconduct and without submitting proof of a single action taken by a municipal policymaker. *See Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000). Plaintiff's Complaint fails to list such actions on the part of a municipal policymaker or any other set of facts that would suggest deliberate indifference on the part

of the Town of Bel Air. It follows then that Plaintiff fails to state a proper failure to train claim under 42 U.S.C. § 1983. Accordingly, this Court dismisses Count VIII of the Plaintiff's Complaint against the Town of Bel Air.

### D. Respondeat Superior Claim

Plaintiff's Complaint lists "Respondeat Superior" as a cause of action in Count X. However, as the Town of Bel Air explains in its Motion, this claim fails as a matter of law. While Respondeat Superior is a theory of liability, it is not separate claim or cause of action. *See Sterling v. Ourisman Chevrolet of Bowie, Inc.*, 943 F. Supp. 577 (D.Md. 2013) (stating that "respondeat superior is not a separate cause of action") Thus, this Court dismisses Count X of Plaintiff's Complaint.

### III.   Plaintiff's Claims Against Officers Carpenter and Madden

### A. Suits Against Officers in their Official Capacities

As a preliminary matter, this Court notes that Plaintiff has brought suit against Defendants Carpenter and Madden in both their individual and official capacities. ECF No. 1 at 26-27. "Official capacity suits generally represent but another way of pleading an action against the entity of which the officer is an agent, ... and damages may be awarded against a defendant in his official capacity only if they would be recoverable against the government entity itself." *Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982). For the reasons stated above, Plaintiff may not recover against the Bel Air Police Department

or the Town of Bel Air. Thus, this Court dismisses Plaintiff's claims against Defendants Carpenter and Madden in their official capacities.

### B. Claims Under 42 U.S.C. § 1983

#### i.    Excessive Force Claims

Plaintiff brings several counts against Defendants Carpenter and Madden for their alleged infliction of excessive force over the course of his arrest and time in custody. These include Count V (Retaliation and Use of Excessive Force in Violation of the 1st and 14th Amendments under 42 U.S.C. § 1983) and Count VI (Violation of the 4th and 14th Amendments of the United States Constitution under 42 U.S.C. § 1983). ECF No. 1 at 19-21. Plaintiff "does not take issue with Defendants recitation of factual elements necessary under Amendment or caselaw" as it pertains to the proper analysis of an excessive force claim, but nonetheless opposes Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgement. ECF No. 43-1 at 4.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. A claim that "law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person" is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). *See Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) ("[W]e are mindful of the Supreme Court's injunction that the Due Process Clause is not the proper lens through which to evaluate law enforcement's

pretrial missteps."). On the other hand, post-arrest claims of excessive force are analyzed under the due process clause of the Fourteenth Amendment. *Riley v. Dorton*, 115 F.3d 1159, 1167 (4th Cir. 1997). To state such a claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).

Whether brought under the Fourth or Fourteenth Amendment, to state an excessive force claim under 42 U.S.C. § 1983, a plaintiff must allege that a right secured by the Constitution or laws of the United States was violated and the alleged violation was committed by a person acting under the color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). It follows that a defendant must be personally involved in an alleged violation of a plaintiff's rights for a valid claim of individual liability to proceed under 42 U.S.C. § 1983. *See Winnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Here, Plaintiff's Complaint devotes much of its focus to the alleged use of excessive force by Defendant Walsh. However, Plaintiff fails to state a plausible excessive force claim against either Defendant Carpenter or Madden. Specifically, Plaintiff alleges that Defendant Walsh unlawfully detained him (ECF No. 1 at ¶ 41), subjected him to a "full nelson" (*Id.* at ¶ 41), slammed his head into the concrete sidewalk (*Id.* at ¶ 46), and body slammed him into the ground while he was being lead to Defendant Walsh's vehicle (*Id.* at ¶ 51).

16

However, as noted in Defendants' Motion, Plaintiff's Complaint contains significantly less detailed information regarding the roles of Defendants Carpenter and Madden. ECF No. 38-1 at 9. For example, while Plaintiff alleges that the Defendants "unnecessarily assist[ed]" Walsh in his initial arrest of Plaintiff, he does not allege that the force applied by either officer was excessive. ECF No. 1 at ¶ 42. Plaintiff does not allege that either Defendant participated in the "full nelson" maneuver that took him to the ground, that either Defendant slammed his head into the sidewalk, or that either Defendant body slammed him. *Id.* at ¶¶ 41, 46, 51. Given this, it's clear that Plaintiff has failed to plead sufficient facts to show that either Defendant employed an unreasonable amount of force against Plaintiff during the events in question. Accordingly, this Court dismisses Plaintiff's excessive force claims against Defendants Carpenter and Madden in Counts V and VI.

    ii.   Unlawful Seizure

In Counts V and VI, Plaintiff asserts claims for violations of his rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution, alleging that Defendants Carpenter and Madden unlawfully detained him as he exercised his First Amendment rights. ECF No. 1 at 19-21. Again, Plaintiff does not challenge the Defendants' "recitation of factual elements or caselaw" for stating such claims, but opposes Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgement. ECF No. 43-1 at 7-8.

The Supreme Court has held that "the plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 587

17

U.S. 391, 402 (2019). And so, the existence of probable cause to arrest generally defeats a claim of retaliatory arrest under the First Amendment. *Id.*; *see also Kerr v. City of Boulder*, No. 19-CV-01724-KLM, 2021 WL 2514567, at *11 (D.Colo. June 18, 2021) (dismissing a First Amendment retaliatory arrest claim because "Defendants had arguable probable cause to arrest Plaintiffs for trespass").

The existence of probable cause similarly defeats claims for unlawful arrest and seizure under the Fourth Amendment. *Johnson v. State*, 356 Md. 498, 504 (1999) (holding that "[t]he legality of a warrantless arrest is determined by the existence of probable cause at the time of the arrest"); *see also United States v. Watson*, 423 U.S. 411, 418 (holding that a warrantless arrest of an individual in public for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause); *Neithardt v. Garvey*, No. 22-CV-00815-LKG, 2023 WL 5671606 (D.Md. Sept. 1, 2023) (holding that the "existence of probable cause to arrest Plaintiff for trespassing on posted property defeats Plaintiff's First and Fourth Amendment claims based upon an alleged retaliatory or unlawful arrest").

Furthermore, a post-arrest acquittal is not, by itself, evidence of a lack of probable cause. *Carter v. Aramark Sports & Entertainment Serv., Inc.*, 153 Md. App. 210, 227 (2003). And so, this Court has recognized that, "[a]t most, an acquittal represents a mere finding that the state prosecutor did not sustain its high burden of proof beyond a reasonable doubt that Plaintiff was guilty of the crimes charged." *Kenny v. Jones*, No. DKC 2007-2421, 2008 WL 11425695, at *3 (D.Md. July 3, 2003).

18

Here, Plaintiff's claims fail because the Officer Defendants had probable cause to arrest the Plaintiff for disorderly conduct. Specifically, the Officers came to the scene due to a 911 call from the Residents of 1057 Wingate Court. ECF No. 1 at ¶¶ 26-28. When they arrived at the scene, Plaintiff was on "private property[,]" intoxicated, and had recently engaged in an argument with the Residents of Wingate Court regarding money owed to Mr. Pinelli. ECF No. 1 at ¶¶ 24, 29, 33.

Under Md. Code § 10-201(c) of the Criminal Law Article, an individual commits disorderly conduct when they enter the land of another and disturb the peace by making an unreasonable loud noise or act in a disorderly manner. Per the description of the encounter in Plaintiff's Complaint, his conduct appears to have violated the statute. Plaintiff also appears to concede as much in his exchange with Deputy Chief Hughes, where, referring to his own conduct, Plaintiff states "[y]eah, you can be arrested for that..." ECF No. 1 at ¶ 66. Given that the Officers had probable cause to arrest Plaintiff, the Court will dismiss Plaintiff's claims against Defendants Carpenter and Madden for violations of his rights under the First, Fourth, and Fourteenth Amendments (Counts V and VI).

### iii.   Failure to Intervene

The Fourth Circuit has recognized that police officers possess "an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers." *Randall v. Prince George's Cnty.,* 302 F.3d 188, 203 (4th Cir.2002) (quoting *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994)). An officer may be liable under § 1983 on a theory of bystander liability if he: "(1) knows that a fellow

officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall*, 302 F.3d at 204 (footnotes omitted). The doctrine recognizes that bystander officers are only obliged to act "in certain limited situations." *Id.* Additionally, "[d]efendant Police Officers cannot be held liable for both participating in the injury and failing to prevent the injury." *Weeden v. Prince George's Cnty.*, No. GJH-17-2013, 2018 WL 269441, at *5 (D.Md. June 4, 2018); *see also Jones v. Chapman*, No. ELH-14-2627, 2017 WL 2472220, at *35 (D.Md. June 7, 2017) ("As a preliminary matter, if the officers 'participate[d] in the fray' ... as plaintiffs claim, then they were not acting as bystanders.").

Turning to the case at hand, Plaintiff's has failed to state a claim for relief against the Defendants that is plausible on its face. As an initial matter, given that Plaintiff has brought claims for assault, battery, false imprisonment, and excessive force against the Defendant Officers, ECF No. 1 at 15-18, Plaintiff is arguably alleging that they participated in the alleged injuries while also failing to prevent them. If this were the case, Plaintiff's claims against the Officer Defendants would fail, just as similar claims failed in *Weeden*, and *Jones*, because the Defendants cannot be held liable for both participating in the injury and failing to prevent it.

However, ignoring this potential deficiency, Plaintiff's claims still fail. Looking at each encounter, whether it be Officer Walsh's interactions with Plaintiff on the public sidewalk, or at his vehicle, no facts in the Plaintiff's Complaint suggest that Defendants Carpenter or Madden would have known of an impending constitutional violation, or that they had a reasonable opportunity to stop such a violation from taking place. In this way,

20

Plaintiff's failure to intervene claims are comparable to others that this Court has dismissed as insufficient. *See Hodge v. Stephens*, No. 12-CV-01988-AW, 2013 WL 398870, at *15 (D.Md. Jan. 31, 2013) (holding that plaintiffs could not plausibly allege a bystander liability claim against two officers who provided backup to a third officer during a domestic disturbance call). Thus, the Court will dismiss Plaintiff's Failure to Intervene Claims against Defendants Carpenter and Madden.

iv.   Qualified Immunity

In their motion, Defendants argue that they are entitled to qualified immunity for their interactions with Plaintiff during the incident in question. *See* ECF No. 38-1 at 14-15. "The doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate clearly established constitutional ... rights that a reasonable officer would have known." *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018). Qualified immunity balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The doctrine protects government officials who make "reasonable but mistaken judgments about open legal questions." *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). *See Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011).

21

Qualified immunity shields an officer from claims for damages unless Plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because the test is two-fold, if the Court determines that the Plaintiff has not stated a valid claim for the violation of his statutory or constitutional rights against the Defendants, then the doctrine of qualified immunity will shield the Defendants from liability. *See Talley v. Anne Arundel Cnty.*, No. CV RDB-21-347, 2021 WL 4244759 (D.Md. Sept. 17, 2021).

Here, no facts in Plaintiff's Complaint suggest that either Defendant Carpenter or Madden violated Plaintiff's statutory or constitutional rights. To be sure, Plaintiff vaguely describes the Defendants' roles in his initial arrest. ECF No. 1 at ¶ 42. However, as discussed above and per the facts provided in Plaintiff's Complaint, *Id.* at ¶¶ 24, 26-29, 33, Defendants had probable cause to arrest the Plaintiff. Aside from his initial arrest, Plaintiff's references to the Defendants' specific conduct during the incident are slim. Thus, Plaintiff has failed to plead sufficient facts under the first prong of the qualified immunity test from *Ashcroft*, and Defendants Carpenter and Madden are thus entitled to qualified immunity.

## IV.   State Constitutional Claims

Plaintiff brings several claims against Defendants Carpenter and Madden under Articles 16, 24, 26, and 40 of Maryland Declaration of Rights. ECF No. 1 at ¶¶ 132-35. However, as Plaintiff notes in his Complaint, *Id.* at ¶ 133, and as Defendants further explain

in their Motion, ECF 38-1 at 16-17, these Articles are read *in pari materia* with their counterparts in the United States Constitution. *Estate of Green v. City of Annapolis*, 696 F.Supp.3d 130, 150 (D.Md. 2023) (reasoning that Article 24 is *in pari materia* with the Due Process Clause of the Fourteenth Amendment); *Myers v. Balt. Cnty*, 981 F. Supp. 2d 422, 430 (D. Md. 2013) (reasoning "Articles 24 and 26 of Maryland Declaration of Rights are the state counterparts to the Fourteenth and Fourth Amendments"); *Heward v. Bd.·of Educ. Of Anne Arundel Cnty*, Civil No. 1:23-cv-00195-ELH, 2023 WL 6381498, at *33 (D. Md. Sept. 29, 2023) ("Article 40 of Maryland Declaration of Rights is the State constitutional counterpart to the First Amendment."). Accordingly, Plaintiff's claims against Defendants Carpenter and Madden under Articles 24, 26, and 40 of Maryland of Declaration of Rights fail for the same reason that Plaintiff's arguments under the 1st, 4th, and 14th Amendments fail.

Plaintiff's arguments under Article 16 of the Maryland Declaration of Rights also fail, specifically because the Article is *in pari materia* with the Eighth Amendment of the United States Constitution and Plaintiff was not a convicted prisoner at the time of the incident. *See Andrews v. Maryland Dep't of Pub. Safety & Corr. Servs.*, No. 1:23-CV-00172-JMC, 2024 WL 520038, at *10 (D.Md. Feb. 9, 2024) (finding Article 16 of Maryland Declaration of Rights *in pari materia* with Eighth Amendment); *see also Rodwell v. Wicomico Cnty*, No. CV DKC 22-3014, 2024 WL 1178202, at *10 (D.Md. Mar. 19, 2024) (holding that an Article 16 claim fails when raised by a pretrial detainee). Accordingly, this Court dismisses Plaintiff's claims in Count IX against Defendants Carpenter and Madden.

V.     Assault, Battery, and False Imprisonment

As previously noted, Plaintiff brings claims for Assault, Battery, and False Imprisonment against Defendants Carpenter and Madden. ECF No. 1 at 15-18. However, these claims fail for many of the same reasons that Plaintiff's claims of excessive force and unlawful seizure fail. Specifically, as noted in Defendants Motion, ECF 38-1 at 17, claims for assault, battery, and false imprisonment fail where there is legal authority or justification for the officers' actions and where no excessive force was used. *See Randall v. Peaco*, 175 Md.App. 320, 332 (2007) ("[T]he principle of reasonableness announced in *Graham* 'is the appropriate one to apply' to excessive force claims brought under Article 26 and for common law claims of battery and gross negligence") (citation omitted); *Williams v. Prince George's Cnty.*, 112 Md.App. 526, 554 (1996) ("False imprisonment, false arrest, and assault and battery (where the force is not excessive) can only occur where there is no legal authority or justification for the arresting officer's actions").

Here, Plaintiff has not offered sufficient facts to show that any force exercised by Defendants Carpenter or Madden was unreasonable. However, as discussed above, Plaintiff's Complaint does offer facts that suggest Defendants Carpenter and Madden had probable cause to arrest the Plaintiff during the incident in question. Accordingly, Plaintiff's claims against Defendants Carpenter and Madden in Counts I, II, and III are dismissed.

VI.    Intentional Infliction of Emotional Distress

In a claim for the Intentional Infliction of Emotional Distress ("IIED"), Plaintiffs must show that: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) The emotional distress must be severe." *Harris v. Jones*, 281 Md. 560, 566 (1977). Generally, IIED claims succeed where there "is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. The requirements of the rule are rigorous, and difficult to satisfy." *Kentucky Fried Chicken Nat. Mgmt. Co. v. Weathersby*, 326 Md. 663, 670 (1992). *See McPherson v. Baltimore Police Dep't*, 494 F.Supp.3d 269, 286 (D.Md. 2020) (explaining the same). IIED claims are "rarely viable in a case brought under Maryland law." *Takacs v. Fiore*, 473 F.Supp.2d 647, 652 (D.Md. 2007) (*quoting Robinson v. Cutchin*, 140 F.Supp.2d 488, 494 (D.Md. 2001)). *See Lasater v. Guttmann*, 194 Md.App. 431, 449-450 (2010) (detailing the "only four times" the Maryland Court of Appeals has recognized the tort of IIED).

Here, the Court finds that the Plaintiff's IIED claims against the Defendants fail for similar reasons their claims for excessive force and bystander liability fail. Specifically, the Defendants hardly appear in the Plaintiff's complaint, and when they do, the Plaintiff rarely takes issue with their conduct. Accordingly, the Plaintiff's IIED claims against the Defendants fail the first three elements of an IIED claim.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendants' Motions (ECF Nos. 34-1 and 38-1) are GRANTED. A separate Order will follow.


Date: _28 August 2024_

_____
A. David Copperthite
United States Magistrate Judge

26